May it please the Court, Albert Chow on behalf of the Petitioner, Yichun Wang. Your Honors, this is an asylum case, and it's based upon an imputed religion, and the issues before the Court are two. One is whether the Petitioner testified credibly, and the second is, if credible, did he suffer past persecution, and we believe that the answer to both of those is yes. In terms of credibility, Your Honors, under a totality of circumstances, we believe that he has testified credibly. The adverse credibility finding was based upon one omission in his asylum statement, and out of that omission arose an inconsistency. Let's talk about that, because under Post-Real ID Act, the inconsistency doesn't have to go to the heart of the claim, correct? Yes. And so, why is this not that type of inconsistency? Well, Your Honor, we believe that there was no inconsistency here. The words that the Petitioner used was loss of consciousness, and Webster's online dictionary defined that as the loss of ability to perceive and respond. Now, it was the I.J. when questioning him about what had happened, the I.J. used the word knocked out. The I.J. used a different term. Well, but we're talking about two things, I believe. There was an omission, and then there's an inconsistency. And the question, so why isn't the omission? Because in the original declaration, I believe your client didn't mention, he mentioned being beat, he mentioned being beaten badly at the second interview, and then during the testimony, he said he was beaten to the point, I guess, of, or that he was unconscious, and then later when asked to clarify, he said, well, maybe not unconscious, maybe I was just dizzy or fuzzy. So, those are the two things we're dealing with, and I think you know that our law, what we just talked about, the real question for me is that, is that omission, is that enough to support, you know, a substantial basis to support the I.J.'s ruling here? And this inconsistency, is that trivial or not? Well, under the case that I cited, Lie v. Holder, the Ninth Circuit said before that omissions are less probative than credibility issues, inconsistencies that are direct contradictions. So this is, so an omission unto itself should not be, an adverse credibility should not be based upon that. And especially in this sense, Your Honor, it'd be one thing if he had said, oh, if he had talked about the effects of the beating and said, oh, I had bruises here or I had a welt on my head or whatever, but he didn't, in his statement, he didn't mention anything about the effects. So even though he omitted the fact that he had lost consciousness from the beating, I don't think that that should be severe enough. So you just told me about Lie regarding omissions. What's your best Post-Real ID Act case regarding this trivial inconsistency? Well, even under the Real ID Act, Your Honor, although an I.J. is allowed to make an adverse credibility finding based upon one inconsistency, everything must be evaluated under a totality of the circumstances. And in evaluating under a totality of the circumstances, when we're talking about hours of testimony and there's one inconsistency, then we believe that that should not support an adverse credibility finding, especially in this case, Your Honor, where we don't believe that there was an inconsistency. As I said, the petitioner's words were lost consciousness. But when the I.J. questioned him, she says, so you're telling me that being knocked out was the most serious thing that happened to you during the interrogation? She used a different word than he did. And that is when he clarified and says, no, I was lightheaded, fuzzy, stunned. He was clarifying essentially what the word that she used, knocked out. And so let's then also talk about the letters from I think his parents or I believe it was and the issue there. Could Mr. Wang have submitted additional documents after the close of the merits hearing before the IGA if he wanted to? No. Generally, the hearing is closed once the hearing is completed, and so extra documentation would not have been allowed. But in this case, Mr. Wang did submit the, I believe, a termination letter for his father. So that was submitted and that was part of the record. And so I realized that the board had said that the father's letter omitted the fact that the father had later been terminated because he had been his son's guarantor. But we submitted the actual termination evidence. Yes, but I think it was the I.J. that said, well, we don't have anything to corroborate that. So we didn't have anything to corroborate the corroboration. I mean, because the fact that his father was terminated was corroborated by, I guess, the best evidence that we could possibly find, which was actually the letter that terminated him. And then the judge is saying that your father's letter didn't actually corroborate what the termination letter already said. See, I don't believe that that makes a lot of sense, and I don't believe that that should, again, support the adverse credibility finding. I mean, did he testify with the translator? He did. Yes. And that's the other thing. I mean, we all know, you know, translations are not perfect. And so when you use these terms, knocked out, unconscious, loss of consciousness, pass out, fuzzy, lightheaded, these kind of things, it might not necessarily translate 100 percent. And so that's why I think when the I.J. used the term knocked out, he wanted to clarify and say, no, no, no, I was fuzzy, lightheaded, stunned. And that's, I think, where the inconsistency allegedly arose. And that's why we believe that that unto itself should not support the adverse credibility finding. And there was other evidence to support, you know, his testimony as well. He did submit, I guess, the fine or the bail receipt. He submitted the fact that he was expelled from school. He submitted that evidence, and he submitted the termination of his father. So these are things that were all corroborated. We have hours of testimony, and then we have one omission and alleged inconsistency, and if that supports an entire adverse credibility finding, I don't believe that under a totality of the circumstances that that should stand. And if credible, then, we believe that he has suffered past persecution. In addition to the 10-day detention and the beating, it was clear that even after he was released, the authorities still had an interest in him. The authorities required him to report weekly. They expelled him from school, and they essentially kept an eye on him. And when he left China and came to the United States, they terminated his father because he was a guarantor. Remind me here, though. Did the I.J. make an alternative finding that if he was credible, then he would meet the status, or did he not? The I.J. did. The I.J. said, basically, I don't find past persecution simply because I don't understand the extent of his injuries. And in my letter under 28J, and I cited a recent case, Guovi Sessions, that was just decided on July 30, 2018, in that case, the court said the seriousness of an injury should not be the determining factor in deciding whether or not one suffered persecution. So that I.J. essentially said, I can't decide whether he suffered past persecution, even if credible, because I don't really know what the seriousness of the injuries was. But the Ninth Circuit has now said that the seriousness of the injuries should not really matter. It should be a totality of circumstances, everything that happened to him. Do you want to reserve the balance of your time? Yes, I will. Thank you, Judge. May it please the Court, my name is Nilam Isinula, and I represent the Acting Attorney General in this matter. The Court should deny the petition for review because substantial evidence supports the agency's determination that petitioner was not a credible witness. Here, the immigration judge identified not only one omission, but several inconsistencies in petitioner's testimony. He twice claimed, once on direct, and then again on cross, that he had lost consciousness or had passed out after being beaten by the Tupouyes officers in the detention center. Yeah, but let's address some of the points that were just made right now. This is basically an omission, is it not? I mean, from the declaration to the testimony, and there's law that tells us that omission is not as strong as a basic inconsistency. What's your response to that? I think there's two key responses to that. One is that, although Lye does say omissions are less probative of lack of credibility than inconsistencies are, here, Mr. Wang, he actually testified that being knocked out during detention was the most serious harm that befell him while he was in detention, and yet he didn't put it into this written declaration that captures the most key parts of his asylum claim. In those kinds of circumstances, it's not unreasonable for the immigration judge to find that he was embellishing his testimony because, on direct, he was the one who volunteered that he had been knocked unconscious. It wasn't something that was coming out on the cross-examination, which was part of what Lye was also concerned about. Another reason why that omission, Mr. Wang's omission, should be treated as probative of lack of credibility is that, as my opposing counsel mentioned, credibility is looked at in the totality of the circumstances. By arguing that this is just one omission, he's essentially saying we can't consider the impact of his several inconsistencies that he made trying to explain the omission. Well, when you say several inconsistencies, what do you, what do you, can you point me to what you mean by several inconsistencies? This seems to be the primary reason that the IJ found him not credible. It's a combination of both, both the omission and that when the immigration judge actually asks him, why is the declaration omitting this information about you having been knocked out or made, rendered unconscious? His responses were very diverging in nature, as the brief explains. First he says, I simply forgot, I forgot to include this information. That's at page 120 of the record. And then he says, you know, after the immigration judge confirms, isn't this the most serious thing that happened to you? He says yes, but then he begins to downplay the severity of his incapacitation, claiming that instead of being totally knocked out, it was more like he was just dizzy or fuzzy headed. In these kind of circumstances, he's a great... Counsel, if Judge Gould, if I could interject a question here on that point, I know I'm just speaking as one judge, so maybe the majority of the panel will agree with you, but yet to me, this whole inconsistency issue seems somewhat trivial. The guy, he says, he was taken into custody, he was beaten, he had welts and marks all over his body. Now I understand the omission about consciousness and whether what he said initially about being unconscious is contradicted by later saying, oh, maybe he was dizzy, but why isn't this just like a typical case where someone being beaten is losing consciousness and they're not totally knocked out? They're like a boxer on the ropes in a prize fight and they're maybe close to losing consciousness, but they're not quite out yet. I think it's different from that scenario because when he was asked himself, what does the loss of consciousness mean to you? And so he defined it as being the loss of feeling or being unable to perceive anything. So he had a definition of consciousness in his mind and then the DHS counselor, I'm sorry, I can't remember who exactly asked him, but he asked, under that definition you've just been to you, were you rendered unconscious? And he said no. So even under his own definition, he was contradicting himself because he knew that all along that was his idea of what unconsciousness meant. And so during direct and on cross-examination, he says clearly I was knocked unconscious and then suddenly when the immigration judge puts him on notice that there's this omission, the declaration, suddenly he's backing away from the idea that he was knocked unconscious and it appears that he's downplaying what happened to him. He also, another statement that's very directly contradictory with previous statements of his, at the administrative record, page 127, he describes his previous testimony and says, quote, I didn't say I lost consciousness, but I was saying that I felt dizzy. So he's clearly, again, contradicting himself here where previously he had very clearly and explicitly said I lost consciousness. Here's the problem I have. I certainly share Judge Gould's concerns about this particular topic. It seems to me that the, and I realize we weren't there, so we have to give deference to the IJ who sat and listened to the testimony. But as I read the record, these so-called inconsistencies seem to me just profoundly trivial. And this man testified for a long time and the vast majority of his testimony, the credibility of it was just not seriously challenged. And I was a trial judge. I mean, I sat there for year after year listening to people testify at trials and you got a real sense of who was telling the truth and who wasn't telling the truth. And you know, it's just hard to think of, I mean, a great, great, great many witnesses who are testifying essentially truthfully, get confused, get tripped up, give bad answers. But, you know, in the final analysis, the test is totality of the circumstances. And you've got to really come back and help me understand why inconsistencies this trivial are going to send this man out of this country. I mean, I don't think they're trivial in nature because they are going to the heart of his claim under even the pre-real ID, right? Because the detention is the core issue, the fact that he was detained and beaten. So for 10 days, beaten more than once, interrogated twice, I mean, really in this totality of the circumstances, which we're supposed to look at, I'm not, I'm not sure that that's, you know, the main part of his, his case. I mean, he does mention it, but it was an omission. And then was the inconsistency slight or was it significant? That's kind of where we are here. And what's your best case? My, my best case is actually, I think, just the statute, which sets out the standard of review of substantial evidence, you know, was what the IJ did. So out of the realm of reason, and as you said, she is sitting before the, the, not the petitioner and adjudicating credibility based on him being right there. And the standard of review is very deferential to the government. He has to show that any reasonable fact finder would be compelled to conclude he was credible, that you know, he has to produce evidence that is so compelling, no reasonable fact finder would, could find that he was not credible. And yet here we have, you know, the letter, letters from his father that don't support that he was at all fired from his job. Let, let, let, let's be clear. At the end of the day, the government is not disputing the fact that he was beaten, right? I, I don't, I think we do dispute the fact that he was beaten. The IJ did not dispute the fact that he was beaten. The IJ's issue was the consequence of the beating, whether he was groggy or whether he had passed out. Respectfully, I read the immigration judge's decision differently. I think she was saying that I had been, I've heard so many inconsistent explanations about why you didn't put your lack of unconsciousness into the declaration. And I don't know if you were partially conscious, if you were, you know, just dizzy or lightheaded, whether you were fully unconscious. So she didn't know what to believe at all in terms of this attack. Yeah, but none of that had to do with the, really had to do with the fact that he was beaten. It had to do with the consequences of the beating. I don't see her in the decision, though, saying that I believe he was beaten. So I'm not. She doesn't. She doesn't. That's not one of the inconsistencies, that's not one of the inconsistencies that she harps on, is it? I think her language is broad enough to suggest that she had trouble believing his claim at all. I mean, let me try to look in this decision, the six seconds that I have left, but, I mean, her decision, I think, is broader than that. She is saying, I don't believe his claim. He may have helped his grandmother get Christian materials. I think there's language to that effect in the decision, but I don't think she lets him off the hook. But isn't this, then I'm becoming confused about how we're to handle the IJ's decision, because it seems to me what you're telling me now is that the finding of inconsistencies that I, for example, am having a little bit of trouble with were simply proxies for her conclusion that's embedded in her opinion that, gee, I just didn't believe him globally. And I'm not sure we can, under the law, really follow that approach. I understand what you're saying, but I do feel she took this out of the realm of trivial inconsistencies. That's the problem I have. You say she took it out, you feel she took it out of the realm of trivial inconsistencies. We can't review that. You may be, that's simply an assertion which we as appellate jurors can't test. I wish I could read this with more time, but she definitely says things like, so here she says, this court considers the respondent's testimony regarding the nature and severity of any physical mistreatment during his detention to be a material and significant aspect of his overall claim for relief. It may be that he was arrested for downloading Christian materials. However, that doesn't mean he has failed to establish due credible testimony that he suffered any physical harm. So she does seem to be taking issue with the idea of the beating at all, and also pointing out that this is a material issue for her. How does she get to know physical harm? Because she simply doesn't believe what he says about that. Well, she has an obligation to say that. I don't want to make jokes about immigration judges' decisions, but they often are not as complete as we would like them to be. I do think that she has... A concern we sometimes share. But I do think that she, in this decision, that's not a problem here, because she was making clear that she did not find him credible with respect to his claim. You feel she was making... I think she lays it out in the language of her decision fairly. Do you have any other questions? Judge Gould, any other questions? I assume the government agrees with the principle we established in the Shrestha opinion that I wrote, that in cases like this under the 3LID Act, we're supposed to look at the totality of circumstances. Very much so. I mean, I think that's also part of why that omission gets strengthened, why the various variable answers he provides to one simple question about why he omitted the fact of his losing consciousness from the declaration. Looking at the totality of the circumstances, those factors gain strength. And so it very much is an important part of this case.  Thank you. Thank you, counsel. Just briefly, Your Honors. I mean, I understand Government Counsel's argument that there were several inconsistencies, but I think all of those point, again, to one alleged inconsistency that we believe was not an inconsistency and that Your Honors have stated seems to be very trivial. So I don't think there are several inconsistencies. We're talking about one. And that should not invalidate. What was otherwise consistent and credible testimony. Thank you. Thank you very much. Thank you all. Thank you both for your presentation here. Today, the case of Wang v. Jefferson Sessions III is submitted.
judges: Parker, Gould, Murguia